[No. 14075. Department Two. July 23, 1917.]

WILLIAM H. RICHARDSON *et al., Respondents*, v. THE CITY OF SEATTLE *et al., Appellants*.[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—ASSESSMENTS—STIPULATIONS. At the trial of condemnation proceedings, the parties have the power by stipulation to modify a preceding agreement or waiver in the owner's petition for the improvement.

ATTORNEY AND CLIENT—STIPULATIONS—POWER OF CITY ATTORNEY. At the trial of condemnation proceedings, the city attorney has power to bind the city by stipulation waiving the right to make an assessment.

MUNICIPAL CORPORATIONS— ASSESSMENTS — CONCLUSIVENESS — ACTION TO CANCEL. Under Rem. Code, § 7892-23, providing that the confirmation of an assessment roll by the city council shall be conclusive, and § 7892-70, expressly saving all actions or proceedings which may be pending, the rule does not apply to prevent an action to cancel an invalid assessment in proceedings which were begun long prior to the enactment of the statute.

SAME—ASSESSMENTS—ESTOPPEL. Where in condemnation proceedings the city attorney stipulated that no damages should be paid and no assessments levied, and the city ratified the agreement by

[1]Reported in 166 Pac. 639; 168 Pac. 513.

striking the assessment from the rolls, and accepted the benefits, it is estopped to assert jurisdiction years afterwards to levy and confirm an assessment for the improvement.

Appeal from a judgment of the superior court for King county, Smith J., entered January 9, 1917, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

*Hugh M. Caldwell* and *Walter F. Meier*, for appellants.

*Benton Embree*, for respondents.

HOLCOMB, J.—Appeal from a judgment or decree of the superior court canceling a local improvement assessment.

No objections were filed nor appeal taken by respondents in the assessment proceedings, but an independent action in equity was instituted to cancel the assessment confirmed against their property.

Prior to May 12, 1906, a movement was started to procure a regrade of that portion of Seattle locally known as Denny Hill. The improvement was initiated by a petition of property owners, which petition, among many others, contains the following recitals:

"That the undersigned hereby reserve the right to claim damages, and the city of Seattle shall ascertain in the manner provided by law the damages to the private property caused by the improvement herein petitioned for; said damages together with the proper costs to be paid by a special assessment to be levied against the property specially benefited. Any part of the compensation, damages or costs that is not finally assessed against said property specially benefited shall be paid from the general fund of the city of Seattle. . . .

"The cost of grading and regrading the streets and avenues lying within the boundary lines of each sub-district as hereinbefore described, together with the cost of all other work necessary or incidental to said grading and regrading shall be borne entirely by the property lying within the limits of said sub-districts respectively, so far as the same may be legally made a lien upon said property.

"And your petitioners do severally agree, and do hereby bind themselves to pay their just and proportionate part of the cost of improving each sub-district as hereinbefore provided for, irrespective of any award of damages that may be made in favor of any individual property owners in the condemnation proceedings herein petitioned for."

It is exclusively upon the clause last above quoted that appellants base their claim of right to make the assessment in controversy.

This petition was signed by May Ray, who with her husband at that time owned as community property the particular half lot here involved. After the filing of the petition of the appellant seeking condemnation of the property pursuant to the petition for the improvement, and before the trial of the cause and the return of a verdict therein touching this property, Mrs. Ray and her husband conveyed the property to Katherine E. Polson, and thereafter on January 5, 1916, Mrs. Polson conveyed the property to respondents.

The property owners' petition and the ordinance providing for the condemnation required the widening of the streets involved, whereby twelve feet were to be taken off this property, and also required changes in the grades of the streets which resulted in leaving this particular half lot about fifty or sixty feet above the newly established grade.

At the trial of the condemnation proceedings touching this lot, testimony was introduced on the part of the city, before the court and jury trying the cause, to the effect that the improvements then upon the land, consisting of a three-story apartment house of the value of about $5,500 or $6,000, on account of the necessary one-to-one slope required by the ordinance to be made upon the property in excavating the streets to the new grade would be entirely destroyed; and also that the damages to that portion of the lot not taken by the proceedings by reason of the change of grade and the regrading of the street would far exceed in amount the special benefits to the lot by reason of the making of the contemplated im-

provement. It was then considered by the corporation coun-
sel and the experts employed by the city to determine the
damages and special benefits to the various parcels of prop-
erty involved, and also by the attorneys for Mrs. Polson, who
then owned the property, that the assessments against this
property, for both the condemnation proceeding and the
actual physical work by the contractor of grading the streets
in accordance with the new grade, would be between $3,000
and $4,000. The then corporation counsel for the city esti-
mated the average total of assessments against a full sized
lot would be about $4,200 or $4,300. In other words, it was
considered by all parties concerned that the damages to this
particular half lot would far exceed in amount the special
benefit thereto by reason of the improvement, and this was ad-
mitted by the representatives of the city then engaged in the
condemnation proceedings. The then corporation counsel
who was trying the condemnation case and the attorney for
Mrs. Polson during the trial of the case entered into an oral
stipulation, in open court before the court and jury, to the
effect that Mrs. Polson would waive all damages, over and
above one. dollar, to the remainder of the lot not taken by
reason of the change of grade and doing the physical work
of regrading the street to the new grade, and that, in con-
sideration thereof, the city would exempt the lot from any
assessment whatever both for condemnation and for making
the physical improvement, and that a verdict should be re-
turned accordingly. After making this stipulation and at the
close of the evidence, the court instructed the jury in the con-
demnation case, in accordance with the stipulation of counsel,
to the effect that the jury should ascertain from the evidence
introduced the amount of damages and the amount of the
special benefits to the remainder of the lot not taken by reason
of changing and establishing the new grades and the grading
and regrading of the streets in conformity with the new
grade; and that, if the jury found that the special benefits
exceeded the damages, then they should return a verdict of

no damages to the lot; but that in the event they should find
from the evidence that such damages exceeded the special
benefits, then they should take into consideration the waivers
of the parties and, in accordance therewith, return a verdict
of one dollar damages to such remainder. Based upon the
evidence, the stipulation, and the instructions, the jury re-
turned a verdict whereby they determined that the owner was
entitled to $1,300 for the twelve feet taken, one dollar dam-
ages to the remainder by reason of the part taken, and the
further sum of one dollar damages to the remainder by reason
of the changing of the grade and grading and regrading the
streets and making the physical improvement in accordance
with the new grade. This verdict was rendered in January,
1907, and in conformity with the verdict, judgment was
entered thereon and the amount of the awards was paid by
the city.

After the entry of the judgment, and on September 28,
1907, the city caused to be prepared and filed an assessment
roll to cover the cost of excavating the streets and making
the physical improvement in accordance with the newly estab-
lished grades. This roll showed that the lot here involved was
assessed in the sum of $1,884.43. Mrs. Polson filed objec-
tions to the making of any assessments against the lot. The
roll was then referred by the council to the street committee
of the council for consideration and report. The city council
and the street committee, while the roll was before them for
consideration for many months, were advised, by the corpo-
ration counsel and by Mrs. Polson's counsel who appeared
before them on many occasions in support of the objections
made to the assessment, of the fact of the making of the
stipulation during the condemnation proceedings and of the
award of damages to the remainder of the lot based on the
stipulation, and the corporation counsel of the city advised
the council and the street committee that, on account of that
stipulation and the award based thereon, the property was
exempt from assessment. Thereupon and by reason of the

stipulation and the award of damages to the lot and on the advice of the corporation counsel, the city council struck the assessment from the roll and vacated the same entirely as to this half lot, but approved and affirmed the roll as to the other property thereon. This confirmation was in January, 1909.

The city made no other assessment against the lot on account of the improvement for nearly seven years, until October, 1915, when it passed an ordinance directing the making of a supplemental assessment, basing its right so to do upon the last clause, heretofore quoted, in the property owners' petition. Pursuant to this ordinance, the city caused an assessment roll to be prepared and filed and an assessment to be made against this lot, which it confirmed by ordinance in July, 1916, long after the purchase by respondents. This is the assessment assailed by the respondents and which the lower court held was made by the city council without jurisdiction. Respondents had no notice of the preparation of this roll or that the city contemplated making any assessments against the property until long after the roll had been confirmed and placed in the hands of the treasurer for collection.

Appellants contend that the corporation counsel, at the time of the trial of the condemnation proceedings, evidently overlooked the provision contained in the property owners' petition wherein the signers agreed to pay their just and proportionate share of the cost of making the improvement notwithstanding any award of damages in the condemnation proceedings. But this assertion is not borne out by the record.

It must be remembered that, by another clause in the petition of the property owners, they reserved the right to claim all damages from the city, to be ascertained in the manner provided by law; and while they did in a further paragraph agree to bind themselves to pay their just and proportionate part of the cost of improving irrespective of any award of damages, nevertheless their later agreement and stipulation made at the trial of the condemnation proceeding modified

or set aside the preceding agreement or waiver in their petition. That they had the right and power so to modify a previous agreement has been upheld by this court in such a matter in *Seattle School Dist. v. Seattle*, 63 Wash. 245, 115 Pac. 173.

Appellants contend, however, that the corporation counsel of the city of Seattle had no authority to enter into such a stipulation as that made at the condemnation trial, and that the city could not be bound thereby. That contention cannot be sustained. The corporation counsel was a duly authorized representative of the city to act for it in all trials and proceedings at law. It is a general rule that a party to an action is bound by the stipulations and agreements entered into by his counsel in open court as a part of the proceedings in the cause; and the acts and doings of the attorney are the acts and doings of the client. 4 Cyc. 934-5; 2 R. C. L., § 63, p. 986; *Coonan v. Loewenthal*, 129 Cal. 197, 61 Pac. 940. If the corporation counsel had no authority to make such stipulation, he had no authority to proceed in any way during the trial unless each step that he took was first authorized by the legislative or political body of the city.

It is contended by appellants that the court had no jurisdiction over the subject-matter, this contention being based upon § 23 of chapter 98 of the Laws of 1911, p. 455, relating to local improvements, which provides, among other things, that:

"Whenever any assessment roll for local improvements shall have been confirmed by the council . . . the regularity, validity, and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment-roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment-roll in the

manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor," etc. Rem. Code, § 7892-23.

Section 70 (p. 480) of the same chapter specifically reserves all rights of action under existing laws which this act in any way supersedes or repeals, if the same at the time of taking effect of this act shall have been commenced.

"All actions and proceedings, which may be pending in court under existing laws which this act in any way supersedes or repeals, shall proceed without being in any manner affected by the passage of this act." Rem. Code, § 7892-70.

These proceedings were begun long prior to the passage of chapter 98 of the Laws of 1911, p. 441 (Rem. Code, § 7892-1 *et seq.*), and this suit is exactly the same kind of a suit as that brought in the cases of *Michaelson v. Seattle*, 63 Wash. 230, 115 Pac. 167, and *Seattle School Dist. v. Seattle, supra*. The lower court therefore had jurisdiction of the subject-matter and of the parties.

It is further contended that the city council had jurisdiction to levy and confirm the assessment regardless of the stipulations entered into in the condemnation proceeding. As was aptly observed by Judge Rudkin in *Schuchard v. Seattle*, 51 Wash. 41, 97 Pac. 1106:

"If the city cannot deprive a citizen of his property without due process of law in a single proceeding, it cannot accomplish the same result by two or more proceedings. Whether the proceedings are dependent or independent, the fact remains that an attempt is here made to levy an assessment on property for a local improvement after all local and special benefits to the property have been offset against damages."

While the question there determined was slightly different from the question here involved, the logic of the observations

there made may be applied with equal force here. The city deliberately led the owner of this property into an arrangement whereby the owner would not recover any damages except the nominal damages agreed upon, in consideration of which the city would not levy any assessments upon the property for the improvement. This condemnation agreement was later ratified by the city in striking from the roll the assessment which was made upon this property, in order to give full faith to the stipulation and the verdict and award which had been made in the condemnation proceeding. It will not do to say that the city council and its corporation counsel had lost sight of the provisions of the property owners' agreement until the time when they attempted to levy the new assessment upon the property in 1915. That was before them originally, and was before them in the condemnation trial and in the proceedings to levy the assessment for the actual improvement. The city not only made these agreements with the property owners, but acted upon the agreements and accepted the benefits thereof. We think for these reasons it is estopped to contend that it had jurisdiction to levy and confirm the assessment. *James v. Seattle*, 57 Wash. 318, 106 Pac. 1114; *Smith v. Seattle*, 41 Wash. 60, 82 Pac. 1098; *State ex rel. Lippincott v. Spokane*, 44 Wash. 688, 87 Pac. 944; *Connor v. Seattle*, 82 Wash. 296, 144 Pac. 52.

The judgment is right and must be affirmed. It is so ordered.

ELLIS, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.

ON PETITION FOR REHEARING.

[*En Banc.* Nov. 16, 1917.]

PER CURIAM—By inadvertent clerical error, this case, though submitted and heard by the full bench, was signed only by the judges of Department Two, which is one ground of petition by appellants for a rehearing *En Banc.*

The other grounds upon which a rehearing has been de-

manded by appellants have been examined and found by a majority of the court, without merit.

The petition for rehearing, having been examined by the entire court, the original opinion is by a majority thereof sustained and rehearing is denied.