Patricia Ann **LUNDEEN**, General Guardian of Persons and Estates of Maureen Joan Cordner and Michael Joseph Cordner, Appellant,

v.

France Jeanne **CORDNER**, Appellee.

No. 18167.

United States Court of Appeals
Eighth Circuit.

Jan. 5, 1966.

George F. Reilly, of Leonard, Street & Deinard, Minneapolis, Minn., for appellant.

John S. Kappock, of Pross, Smith, Halpern & Lefevre, New York City, and John P. Lommen, of King, MacGregor & Lommen, Minneapolis, Minn., for appellee.

Before MATTHES and GIBSON, Circuit Judges, and LARSON, District Judge.

GIBSON, Circuit Judge.

This is an appeal from the United States District Court for the District of Minnesota in a diversity action concerning the proceeds of a group life insurance policy and annuity contributions. The basic issue of the case is the determination of the rightful beneficiaries. The trial court awarded a summary judgment to intervener and defendant, Northwestern National Bank of Minneapolis, (Northwestern) Trustee under the Last Will and Testament of Joseph F. Cordner, the insured and prospective annuitant.

Appellant, plaintiff below, (hereinafter referred to as plaintiff) is a former wife of one Joseph Cordner, deceased. During their marriage two children were born, Maureen Joan Cordner and Michael Joseph Cordner. Prior to the time of his death Joseph Cordner was working in Libya. Mr. Cordner's employer Socony Mobil Oil Company, Inc. (Socony) carried a group life insurance contract with Metropolitan Life Insurance Company, (Metropolitan) under which Mr. Cordner as the insured had in 1956 designated his children, Maureen and Michael, as equal beneficiaries. In 1958 Joseph Cordner, having been divorced by plaintiff, married intervener, France Jeanne Cordner. In April 1960 a child was born of this second marriage. On October 3, 1962 Joseph Cordner died. During all periods above mentioned Mr. Cordner was in the employ of Socony stationed in Libya. The insurance policy and the annuity were in effect and due proof of loss was made. The contest for the proceeds arises between adverse claimants; the original designated beneficiaries, Maureen Joan and Michael Joseph Cordner; and France Jeanne Cordner, the second wife of assured, and Northwestern, as Trustee under the Last Will and Testament of Joseph F. Cordner, deceased.

On November 5, 1963, plaintiff as guardian and on behalf of her two chil-

dren Maureen and Michael Cordner, the named beneficaries, sued the insurer, Metropolitan, to recover the proceeds of the policy. Metropolitan answered that there were adverse claims to the policy benefits.[1] Thereafter, Northwestern as the Trustee under the Last Will and Testament of the deceased, Joseph Cordner, was interpleaded as an additional defendant. Appellee, France J. Cordner, then intervened in the action. Both intervener and Northwestern allege that sometime in 1961 the decedent effected a change of beneficiaries. As a result of this alleged change, intervener states she is entitled to one-fourth of the insurance proceeds with the remaining three-fourths going to defendant, Northwestern in trust pursuant to Mr. Cordner's Will, which provided that income from the proceeds of the insurance policy would be paid to all three children of Joseph Cordner until they reach the age of 18, with the principal then going to intervener.

It is clear that the first two children of decedent, Maureen and Michael, are the named beneficiaries. However, it is asserted that Joseph Cordner did everything within his power to effect a change of beneficiaries as alleged by intervener. Intervener presented affidavits and exhibits in support of her position and moved for summary judgment. The motion was granted and plaintiff contests this ruling on the ground that a summary judgment is not proper at this point in the litigation and that there remains a genuine issue on a material fact. It is now our task to determine if the summary judgment was properly granted.

The policy clearly allows the insured to change the beneficiaries at will.[2]

The employer Socony was the admitted duly authorized representative of Metropolitan and kept all of the records relevant to the policy beneficiaries and any changes made in beneficiaries. In addition, as a matter of Socony policy all certificates [of insurance] held by employees working in foreign countries were held in Socony's New York office; therefore, any notice to Socony of a change in beneficiary would be operative to effectuate such a change; and it would be the ministerial function and duty of Socony to endorse the change requested on the retained certificate. Plaintiff accepts as controlling the general rule of law that an insured's attempt to change his beneficiary will be given effect if all that remains to be done is a ministerial duty on the part of the insurer. Luhrs v. Luhrs, 123 N.Y. 367, 25 N.E. 388, 9 L.R.A. 534 (1890); Brajovich v. Metropolitan Life Ins. Co., 189 Minn. 123, 127, 248 N.W. 711, 713 (1933); Zervas v. Zervas, 338 F.2d 299 (8 Cir. 1964).

Therefore, if deceased completed all the necessary steps required of him to change the beneficiary in his policy, intervener would be entitled to judgment. Furthermore, if intervener can demonstrate this fact so clearly that there is no longer a genuine issue of fact, summary judgment may be properly granted under provisions of Rule 56(c) of the Fed.R.Civ.P. Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944); Christianson v. Gaines, 85 U.S.App.D.C. 15, 174 F.2d 534 (1949); Minnesota Mining and Manu-

1. The case of Cordner v. Metropolitan Life Insurance Company and Socony Mobil Oil Company, Inc., 234 F.Supp. 765 (1964) was filed November 26, 1963, in the Southern District of New York. Motion of defendant Metropolitan to interplead Patricia Ann Lundeen as guardian (plaintiff in the case at bar) was denied on jurisdictional grounds.

2. Section 15 of Certificate issued under Group Policy No. 103 provides in its pertinent part as follows:

"Section 15, Change of Beneficiary.— The Employee may, from time to time, change the beneficiary by filing written notice thereof with a duly authorized representative of the Insurance Company, accompanied by this certificate. Such change shall take effect upon endorsement thereof by the Insurance Company on the certificate, and, unless the certificate is so endorsed, the change shall not take effect * * *."

facturing Co. v. Superior Insulating Tape Co., 284 F.2d 478 (8 Cir. 1960).

We are of the opinion that the affidavits and exhibits introduced by intervener clearly and undeniably indicate that deceased made a change in his policy's beneficiaries. First, it appears that after deceased's marriage in 1958 to intervener he amended his group hospitalization and employee savings plan to include intervener. Furthermore, certain correspondence conclusively indicates that a change in the life insurance was actually made.

Mr. Iten, an employee of Socony in Libya, whose duties included administration of company benefit plans, advising employees concerning the plans, referring questions about the plans to the New York office, issuing change of beneficiary forms on request, and offering necessary guidance on completion and execution of forms, (after consultation with the deceased in April 1961) prepared a letter to the New York office, dated April 19, 1961, stating that Joseph Cordner desired information as to who were his present beneficiaries under the company benefit plans and that Mr. Cordner had married for a second time and was not certain whether he had changed his beneficiary. This letter from the Libyan office was answered under date of May 3, 1961 informing him that his designated beneficiaries were Maureen Joan Cordner, 50 per cent, and Michael Joseph Cordner, 50 per cent; the letter further gratuitously asking whether he would prefer the entire benefit to be paid to any survivor in the event of the death of any of the named beneficiaries.

Mr. Iten was transferred from Libya shortly thereafter and his duties were assumed by Mr. Burks. Burks by affidavit stated that early in 1961 Mr. Cordner came to him with a request to change his beneficiaries; that Burks issued the necessary forms to Cordner and gave him instructions on how to complete the forms, at which time Cordner produced a copy of his Will made in North Dakota while vacationing from Libya in 1960. They discussed the form of beneficiary designation which might be appropriate under the terms of the Will. Mr. Cordner personally completed the forms, endorsed the beneficiary changes he wished to make on the back of each form, signed the forms in Burks' presence, (the latter acting as a witness to the signature) and then left the completed forms with Burks for transmittal. Since Burks was unfamiliar with the type of beneficiary changes endorsed on the forms he made a thermofax copy of Cordner's Will and sent this reproduction together with the completed change of beneficiary forms to the New York office in a letter dated May 11, 1961, which letter in part reads as follows:

"Please review the enclosed employee change of beneficiary forms and advise us if this designation is acceptable under the plan."

The Home Office responded by stating in a letter dated June 1, 1961:

"We are processing the Change of Beneficiary forms completed by the above employee [J. F. Cordner] and forwarded to us. * * * We see no reason why the designation will not be acceptable."

Mr. Burks in his earlier affidavit of March 30, 1963 states that to the best of his recollection the change of beneficiary requested by Cordner was as follows:

" 'One-fourth of the proceeds to my wife France Jeanne Cordner and the balance to the Northwestern National Bank of Minneapolis, Minneapolis, Minnesota in trust for the uses and purposes set forth in my Last Will and Testament.' "

Burks in his second affidavit prepared for the purpose of the summary judgment proceeding confirmed the factual statements in his earlier affidavit and detailed the discussion and the procedures employed in the requested change of beneficiary by Cordner. He further stated that since the New York office had the Certificate for endorsement and since the Home Office stated in its letter of June 1, 1961 that they were processing the

change of beneficiary forms he had no reason to believe that the processing of the changes had not proceeded to completion in the normal course. He was in the New York office at the time when a search of the files was made for the change of beneficiary forms, which, of course, they were unable to locate. When he returned to Tripoli, with instructions from the New York office to continue the search and to forward to New York all company papers having to do with Mr. Cordner's employment, he found a copy of a letter addressed to Cordner by his attorney suggesting the form of beneficiary designation required to effect the provisions of his Will. Burks then recalled that Mr. Cordner had referred to this same letter when discussing beneficiary changes in 1961 and that Cordner had used the suggested language in completing his change of beneficiary forms. After stating that he cannot restate from memory the text of the changes, he said that "I can and do reconfirm, upon my own direct knowledge and positive recollection that beneficiary changes so made by Joseph Franklin Cordner were in the form suggested by his attorney's letter and quoted verbatim from that letter in my prior affidavit."

Further correspondence indicates that the change of beneficiary forms were forwarded to the employer's Annuity and Insurance Department. A search of the department, however, never uncovered the form or the exact language used therein. It also appears by affidavit that all of the above related correspondence was properly identified and was prepared, mailed, received and kept as part of the business records of the company.

Plaintiff presents no counter evidence nor in any way indicates that intervener's evidence is not worthy of belief. Therefore, we believe there is no genuine issue of fact on this point. It is clear that Joseph Cordner actually made a change in the beneficiaries of his life insurance policy.

However, to entitle intervener to summary judgment, it must not only be clear that a change was made, but the wording of that change must be shown beyond any reasonable and genuine dispute. This point, too, was well covered in intervener's supporting papers.

While in the United States in July 1960, Joseph Cordner consulted a North Dakota attorney, one John Traynor, regarding a Last Will and Testament. By affidavit Mr. Traynor states that deceased informed him, "that he wished to make his wife beneficiary of ¼ part of the proceeds [of the insurance policy] and to place the balance in trust for his children," and "that he prepared the Will in accordance with the plan." In order to place his client's expressed desire into operation Traynor drafted a Will that stated in part:

" 'That portion of my life insurance on my life payable to NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, in Minneapolis, Minnesota, I give and bequeath to NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS IN TRUST for the following uses and purposes, to wit: * * *.

" 'The Trustee shall pay to my children, Maureen Joan Cordner, Michael Joseph Cordner, Geoffrey Philip Cordner and any other children that may hereafter be born of my present marriage, the entire income * * * in equal shares * * * until he or she reaches the age of eighteen (18) years.' " [at which time the entire principal of the Trust Estate shall be paid to France Jeanne Cordner.]

To further effectuate his client's wishes, Mr. Traynor advised Mr. Cordner how to change his insurance policy. He set forth this advice in a letter to Mr. Cordner reading in part as follows:

" 'In order to make the Trust arrangement in your Will effective, you should change the beneficiaries on your life insurance policy as follows:

" ' "One-fourth of the proceeds to my wife, France Jeanne Cordner, and the balance to the Northwestern

National Bank of Minneapolis, Minnesota, in Trust for the uses and purposes set forth in my Last Will and Testament." ' "

From the affidavit of the attorney concerning the discussion of deceased's desires, from the letter written by the attorney explaining how the beneficiaries should be changed to effectuate these desires, and from the wording of the Last Will and Testament it is clear that Joseph Cordner intended to change the beneficiaries of his insurance policy by giving one-fourth to intervener and the balance to Northwestern in trust. We can presume that this intent remained with Mr. Cordner during the intervening ten months between the Will's execution and the date of the beneficiary change. This presumption is supported by the presence of his unrevoked Will, which in itself indicates that he maintained this intent even until the time of his death, a year and a half after the change in beneficiary was sent to the company's home office. When we take this information along with the proof that some sort of beneficiary change was actually made by Mr. Cordner, and that the only change discovered was set out in Mr. Traynor's letter, we can presume that the change was made in accordance with this expressed intent. Otherwise, this unrevoked provision in Mr. Cordner's Will would have no force or effect.

However, in addition to this presumption we have the uncontested affidavits of a non-interested third party who was in a position to be aware of the actual wording of the change. The affiant, Mr. Harold Burks, was a fellow employee of Mr. Cordner in Libya, and supervised Mr. Cordner in filling out the required change of beneficiary forms. Mr. Burks is probably the only person that was in a position to be aware of the wording of the document. His affidavits are entitled to considerable weight in determining the merits of a summary judgment motion, especially where there is no indication of any counter-evidence. Moreover, Mr. Burks' assistance in processing the change in beneficiary was done in the regular course of business of Socony, and pursuant to his assigned duties. It has been held that the clear affidavits from the only persons in a position to be aware of a factual situation can well serve as the basis for a summary judgment. Dyer v. MacDougall, 201 F.2d 265 (2 Cir. 1952).

Mr. Burks' first affidavit executed in Libya and forwarded to the company before any litigation had commenced said that Mr. Cordner made a change in beneficiaries and the change read as follows:

" ' "One-fourth of the proceeds to my wife France Jeanne Cordner and the balance to the Northwestern National Bank of Minneapolis, Minneapolis, Minnesota, in trust for the uses and purposes set forth in my Last Will and Testament." ' "

The second affidavit of Mr. Burks executed by him in Singapore, Malaysia and made in anticipation of this litigation, confirmed the factual statements made in his first affidavit.

So, in support of intervener's claim there is undisputed proof that Mr. Cordner had manifested an intent to give intervener one-fourth of his insurance proceeds with the balance going into the trust established by his Will. It is likewise clear beyond any shadow of doubt that Mr. Cordner subsequently made a change in his insurance beneficiaries. The logical conclusion is clear. He made the change in accordance with his prior expressed intent. This presumption is supported by the two affidavits of Mr. Burks which recite from direct and positive recollection that the beneficiary changes were copied from Mr. Cordner's letter from his attorney and were in form exactly as alleged by intervener.

In response to the overwhelming documentary evidence supported by affidavits all of which consistently showed that Cordner had requested a change of beneficiary in accordance with his lawyer's letter and his own Last Will and Testament, the plaintiff submitted her own counter-affidavit to the effect that Mr. Cordner was very much interested in the

welfare of his first two children (the named beneficiaries) and was aware of the future financial difficulties· they would face. No further information was offered. The Court, therefore, was not presented with a situation where it was asked to weigh conflicting affidavits. The problem was only, did the affidavits and exhibits of intervener sustain the necessary burden in order to allow a summary judgment? The trial court felt the burden was sustained, and from the above related facts we agree with the trial court's conclusion. The showing made by intervener on the motion for summary judgment covers all of the material issues of fact in the case and as found by the trial judge, Cordner had "effectively changed the beneficiaries in his group policy and that he did all that he was required to do." [3]

■■ We are of the opinion that if this information were presented at trial, intervener would be entitled to a directed verdict in her favor, and it has been said that if the information presented entitles one to a directed verdict, a summary judgment is in order. Christianson v. Gaines, 85 U.S.App.D.C. 15, 174 F.2d 534 (1949); 6 Moore's Federal Practice, § 56.11 [3] (2nd Ed. 1953) at page 2071. Intervener having made a sufficient showing, it then rests upon the plaintiff to specify at least some evidence which could be produced at trial. Belinsky v. Twentieth Restaurant, Inc., 207 F.Supp. 412 (S.D.N.Y.1962). Plaintiff apparently is of the opinion that, since she makes a prima facie case by merely introducing the Certificate showing her children as designated beneficiaries, she is entitled to a trial on the issue of (1) whether any change of beneficiary was made, and (2) if so, what changes were actually made. This we do not feel is a correct view of the law.

■ The counter-affidavit of the plaintiff does not meet the issues raised and supported by the intervener. This leaves no genuine issue as to any material fact, and presents a predicate for a summary judgment under Rule 56(c), Fed.R. Civ.P.

Rule 56(e), Fed.R.Civ.P. provides that "The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." If there were any question about the affidavits made by Mr. Burks and Mr. Iten, the plaintiff should have raised an issue thereto by affidavit or by requesting additional time to depose these affiants by deposition or by written interrogatories under Rule 28(b) or Rule 31 of Fed.R.Civ.P. This the plaintiff failed to do. The 1963 amendment to Rule 56(e) Fed.R.Civ.P. adds:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Having completely failed to respond in any meaningful way to intervener's

3. A portion of Judge Nordbye's opinion reads as follows:
   "The Court is well aware that a summary judgment should not be granted except when it appears that the movant's position for such relief is made 'with such clarity as to leave no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact resolved against the movant; giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against.' Northwestern Auto Parts Co. v. Chicago B. & Q. R.R. Co., 240 F.2d 743, 746 (8 Cir. 1957). But applying that rigid test, it would seem that only one possible conclusion could be reached on this showing, and that is that on or about May 11, 1961, Cordner caused to be transmitted to Socony Mobil Oil Company in New York the form submitted by Socony Mobil Oil Company in change of beneficiaries in this group policy in the language as noted in Mr. Traynor's letter to him under date of July 28, 1960."

clear showing of the absence of a genuine issue, this amendment clearly authorizes the entry of a summary judgment. Plaintiff failing to place in issue any elements of intervener's documented case would translate a trial into a useless formality, thus making a summary judgment proper. Radio City Music Hall Corp. v. United States, 135 F.2d 715 (2 Cir. 1943).

The real gravamen of plaintiff's objection is not that there is conflicting evidence but rather that the summary judgment rests upon the affidavits of Harold Burks. His testimony being so vital to intervener's cause, it is asserted that the case should proceed to trial in order that the demeanor of the witness could be observed and his testimony subjected to the test of cross-examination.

■■ In passing on this contention it might be well to make four preliminary observations. First, affiant Burks appears to be an unbiased witness. He has no financial or personal interest in the outcome of this litigation. Second, there is no doubt but what his testimony is competent both in regard to his mental capacity and his being in a position to directly observe the facts related in his affidavits. Third, his participation in the change of beneficiaries was in the regular course of his duties with Socony. Finally, both affidavits are positive, internally consistent, unequivocal, and in full accord with the documentary exhibits. Therefore, even though cross-examination is a trial right which must be carefully protected, in this case, unlike many others there is no obvious advantage to be gained from a cross-examination. If there were, a summary judgment might arguably be improper. But where there is no indication that the affiant was biased, dishonest, mistaken, unaware or unsure of the facts, the cases declaring that cross-examination is necessary when one of the above is present, have no application here. There being no positive showing that this witness's testimony could be impeached or that he might have additional testimony valuable to plaintiff, summary judgment was

properly granted. The opposing party cannot as a matter of course force a trial merely in order to cross-examine such an affiant, nor must the Court deny the motion for summary judgment on the basis of a vague supposition that something might turn up at the trial. Schneider v. McKesson & Robbins, Inc., 254 F. 2d 827 (2 Cir. 1958); Port of Palm Beach District v. Goethals, 104 F.2d 706 (5 Cir. 1939); 6 Moore's Federal Practice, § 56.15 [3] (2d Ed. 1953) at page 2129.

There is absolutely no showing that a trial would produce any different or additional evidence. It appears that Burks is now stationed in Singapore, far beyond the subpoena powers of the trial court. Neither party would be able to compel his attendance before the trial court. Since this witness is out of the jurisdiction, any of the parties, on the other hand, would be free to introduce Burks' testimony by use of a deposition. Therefore, in all likelihood Burks would never have to appear in open court. What would plaintiff have to gain by forcing a trial under these circumstances? We feel very little, if anything. A full trial would not give plaintiff an opportunity to cross-examine Burks in open court, nor would it unveil his demeanor to the trier of fact.

In the event of a trial plaintiff would only be free to obtain Burks' sworn testimony by deposition or upon written interrogatories pursuant to Rule 28(b) or Rule 31, Fed.R.Civ.P. and by 28 U.S. C.A. § 1783(a) (1). Plaintiff, however, was free to take this action even prior to the present motion for summary judgment but chose not to do so. When the motion for summary judgment was presented, plaintiff, if she felt Burks had information valuable to her cause, was again free to move for a delay in judgment and secure Burks' deposition. Again plaintiff took no action. Apparently plaintiff felt she had nothing to gain by a deposition, yet under the circumstances of this case that is probably the most she could expect even if this case went to trial. Therefore, we do not

feel that plaintiff is in a position at this time to force a trial. A trial would not secure Burks' presence, it would only force the taking of his deposition, a course previously open to plaintiff which she elected not to pursue.

This point was raised in the case of Schneider v. McKesson & Robbins, Inc., 254 F.2d 827, 831 (2 Cir. 1958), in which the Court said:

"Had the appellants utilized the discovery procedures available to them, they might have obtained information tending to verify their suspicions, but their failure to do so precludes us from finding that they have raised any factual issues which may be considered 'genuine.' Their failure to make use of the discovery procedure is also destructive of the contentions that they have not had a sufficient opportunity to test the veracity of facts stated in the supporting affidavits, * *."

The recent case of Robin Construction Co. v. United States, 345 F.2d 610, 614 (3 Cir. 1965) voiced a similar sentiment in allowing a summary judgment to stand:

"As has often been pointed out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone * * * is not enough."

The position declaring that a party opposed to a summary judgment based upon affidavits must assume some initiative in showing that a factual issue actually exists is perfectly sound in the light of Rule 56, Fed.R.Civ.P., which specifically allows the use of affidavits in summary judgment proceedings. For if plaintiff's position is correct that an affiant's credibility is always an issue for the trial court, then the granting of a summary judgment would be virtually impossible when it is based in any way upon an affidavit. Rule 56 would be nullified by the prevailing party's use of one affidavit and the bald objection by the opposing party to the affiant's credibili-

ty. The reference in this rule to "affidavits" would therefore be of no effect.

This does not mean that an affiant's credibility cannot properly be put in issue by a litigant, but in doing so specific facts must be properly produced. At this point the 1963 amendment to Rule 56(e) comes into play requiring the opposing party to respond or suffer the fate of a summary judgment, if otherwise appropriate. Plaintiff failed to respond to the adequate and substantial showing of intervener, so the trial court properly granted the summary judgment. Keeping in mind that the purpose of the summary judgment is to avoid useless trials, from the circumstances of this case we believe a trial would indeed be a useless waste of time and expense to the parties as well as a needless inconvenience to the Court.

It also appears from the noncontroverted evidence in this case that any change of beneficiary requested by Cordner would be effective when placed in the hands of Mr. Burks, an employee of Socony specifically charged with the duty of processing beneficiary changes for Socony's employees under company benefit plans. Since Socony was the duly authorized agent for Metropolitan notice to an employee of Socony charged with the departmentalized duty of assisting, aiding and counseling in the making of such changes could be considered as effectuating a change of beneficiary at this point, the employee having done all that he could do to transmit to the company his intention of a change and the wording of the change. The Certificate had previously been surrendered to the company and was retained by the company for the benefit of the employee. Hence, Socony had the administrative and ministerial duty of endorsing any requested change on the Certificate.

As a matter of law, if Joseph Cordner did all that he could do to comply with the requirements, a requested change in beneficiary will be declared effective regardless of the fact that the insurance company or its duly authorized

agent failed to complete the change. This fact was clearly demonstrated by the affidavits and exhibits of intervener to the point we believe that the trial court was justified in declaring that there no longer remained any genuine issue. Therefore, the summary judgment was properly granted.

Judgment affirmed.