## BURNER SERVICE AND COMBUSTION CONTROLS COMPANY, INC. v. CITY OF MINNEAPOLIS.

250 N. W. 2d 224.

January 27, 1977 — No. 46626.

*Carlsen, Greiner & Law* and *Jack D. Elmquist,* for appellant.

*Walter J. Duffy, Jr.,* City Attorney, and *Frank C. LaGrange* and *Jerome R. Jallo,* Assistant City Attorneys, for respondent.

Heard before Todd, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Burner Service and Combustion Controls ¹ Company, Inc. (Burner), appeals from a judgment entered on January 22, 1976, pursuant to an order by the district court granting the motion for summary judgment of the city of Minneapolis and denying Burner's motion for summary judgment. We reverse.

The issue presented in this appeal is whether the city attorney is, as a matter of law, without authority to bind the city to a stipulation of settlement with a condemnee, while acting pur-

suant to a resolution of the city council directing him to "take all necessary steps to prepare for, institute, and prosecute on behalf and in the name of the City of Minneapolis all such condemnation proceedings as may be necessary for the acquisition by said City of Minneapolis [of Burner's property interest], the costs thereof to be paid from [funds authorized for this purpose]."

This appeal arises out of a condemnation proceeding instituted by the city of Minneapolis as part of a development district in the Nicollet-Lake area where Burner leased property.

On November 22, 1972, the city council designated the Nicollet-Lake area a development district. Shortly thereafter it authorized funding for the district. Walter J. Duffy, Jr., the city attorney, was authorized to purchase or condemn property in the district.

On May 8, 1974, a condemnation proceeding was brought by the city. The petition listed Burner as a respondent and recited that the city attorney was given authority to direct condemnation proceedings on behalf of the city and that the city deemed it necessary to secure the land under the "quick take" provision of Minn. St. 117.042.[1]

The petition was heard on June 18, 1974, before Judge Edward Parker, who allowed the condemnation to proceed but denied the city's request for a "quick-take" and immediate possession.

On December 12, 1974, Burner's president, Thomas A. Ryan,

[1] Minn. St. 117.042, provides: "Whenever the petitioner shall require title and possession of all or part of the owner's property prior to the filing of an award by the court appointed commissioners, the petitioner shall, at least 90 days prior to the date on which possession is to be taken, notify the owner of the intent to possess by notice served by registered mail and shall pay to the owner or deposit with the court an amount equal to petitioner's approved appraisal of value. If it is deemed necessary to deposit the above amount with the court the petitioner may apply to the court for an order transferring title and possession of the property or properties involved from the owner to the petitioner."

and an assistant city attorney signed a stipulation of settlement. The settlement provided for payment of $15,778, allocating $7,500 to the present value of Burner's leasehold interest and $8,278 to Burner's irremovable fixtures, in return for a quit claim deed from Burner and the termination of Burner's interests in the premises on March 29, 1975.

A problem developed on February 4, 1975, when the assistant city attorney informed Burner's attorney that the city would not pay the portion of the settlement previously allotted to Burner's leasehold interest ($7,500) because an examination of Burner's lease disclosed a clause which, in the city's opinion, terminated Burner's leasehold interest in the event of condemnation.

In response, Burner instituted an action in district court for breach of the stipulation of settlement. Cross-motions for summary judgment were heard, and the city's motion was granted and Burner's motion was denied. Burner appeals from the judgment entered.

A motion for summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law. Rule 56.03, Rules of Civil Procedure; Couillard v. Charles T. Miller Hospital, Inc. 253 Minn. 418, 92 N. W. 2d 96 (1958); 10 Dunnell, Dig. (3 ed.) § 4988b.

In Sauter v. Sauter, 244 Minn. 482, 484, 70 N. W. 2d 351, 353 (1955), this court stated the rules governing a motion for summary judgment as follows:

"A motion for a summary judgment may be granted pursuant to Rule 56.03 only if, after taking the view of the evidence most favorable to the nonmoving party, the movant has clearly sustained his burden of showing that there is no *genuine issue* as to any *material fact* and that he is entitled to judgment as a matter of law. It is essential to bear in mind that the moving party has the burden of proof and that the nonmoving party has the benefit of that view of the evidence which is most favorable to

him. The salutary purpose and useful function of summary judgment proceedings as a means of securing the just, speedy, and inexpensive determination of the action (Rule 1) is well recognized, but resort to summary judgment was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists. In other words a summary judgment is proper where there is no issue to be tried but is wholly erroneous where there is a genuine issue to try.

"The controlling words *genuine issue* and *material fact* need no amplification since they best speak for themselves. Their application in determining whether there is an absence of a *genuine issue* as to a *material fact* requires a careful scrutiny of the pleadings, depositions, admissions, and affidavits, if any, on file. Since, however, all factual inferences must be drawn against the movant for summary judgment, it follows that, even where the movant's supporting documents are uncontradicted, they may in themselves be insufficient to sustain his burden of proof."

Thus, in view of these governing principles, the granting of the city's motion for summary judgment can be upheld only under one of two circumstances: (1) if, as a matter of law, a city attorney may not bind the city to a stipulation of settlement under any circumstances; or (2) if such authority may exist, the facts before us raise no genuine issue as to the actual authorization of the city attorney to enter into a settlement on behalf of the city.

The city contends that the signing of the stipulation of settlement by the city attorney was the attempted performance of a nondelegable duty of the city, and as such, no legal effect can be given to the city attorney's acts. The city further contends that Burner must be presumed to know the extent of the power of the officers with whom it dealt and is thus precluded from arguing either actual authority or estoppel premised on actions within the permissible scope of the officer's authority.

Burner, on the other hand, contends that the city attorney not only had the power but also the specific authorization to settle

under the condemnation action initiated by the city attorney under the direction of the city council.

In granting the city's motion for summary judgment, the trial court agreed with the city's position. It found that the signing of the settlement agreement by the city attorney involved the attempted delegation of a nondelegable duty, stating in its memorandum:

"In *Wilson v. Minneapolis*, 283 Minn. 348, 168 N. W. 2d 19 (1969), the Minnesota Supreme Court held that municipal officers cannot go beyond the authority given them by law, nor delegate powers involving judgment or discretion. In other words, the City Council cannot delegate its powers that call for judgment or discretion on its part, but  must exercise those powers itself.

"* * * It is this Court's opinion that a decision to pay money out of the City's Treasury in a condemnation proceeding is a power involving judgment or discretion by the City Council and, therefore, must be exercised solely by the  City Council and not by anyone presumably or *actually having received authority to make that decision for the City Council.*

"* * * Since this Court has already determined that the City Council alone had power to deal with any condemnation awards, no representative from the City Attorney's office could obligate the City Council to the stipulation in this case, regardless of the fact that plaintiff may have relied on that representative's action." (Italics supplied.)

Both the trial court and the city rely on provisions of the Minneapolis City Charter for their conclusion that the city is without authority to enter into stipulation agreements involving condemnation. Minneapolis City Charter, c. 4, § 14, provides:

"The City Council shall have the management and control of the finances and all property of the city * * *."

Minneapolis City Charter, c. 5, § 26, also provides:

"No money shall be paid out of the City Treasury, except for

principal or interest of bonds, unless such payment shall be authorized by a vote of the City Council, and shall then be drawn out only upon orders signed by the Mayor and Clerk and countersigned by the Comptroller-Treasurer, which orders shall specify the purpose for which they were drawn, and the funds out of which they are payable, and the name of the person in whose favor they may be drawn, and may be made payable to the order of such person or to the bearer, as the City Council may determine."

Minneapolis City Charter, c. 4, § 15, further states:

"The City Council shall have the power to acquire by purchase or condemnation such private property as may be necessary for sites for public buildings for the use of the city and all departments thereof, for all structures connected with any department of the city, and for all streets, alleys and public squares in the city, and to ascertain and determine the value of all such private property taken for such uses, and the amount of all damages occasioned to any private property by reason of any public works or structures, and for that purpose may appoint commissioners to appraise such value or damages, or acquire information thereof in any other manner it shall deem advisable."

From these provisions the city concludes that the city attorney is, as a matter of law, without authority to enter into a stipulation of settlement.

However, the real issue here, as stated by Burner, is not whether there was a *redelegation* of authority by the city to the city attorney, but rather whether there had been an *actual exercise* of the power by the city itself. The distinction between *redelegation* and *actual exercise* is noted in 1 Nichols, Eminent Domain (Rev. 3 ed.) § 3.211[1], which states:

"Where the power of eminent domain has been granted to a municipality it is questionable whether the latter has the right to redelegate such power to a subordinate city agency or official. The grant of power by the state is to the city and not to any

board or commission of the city. The municipality has no inherent power of eminent domain but acquires its right to deal with the subject from the state. It does not acquire the right to redelegate by implication from its delegated powers as set forth either in a statute or its charter, although it may be given express power to do so. It is equally without power to give itself the right to redelegate the power by a municipal ordinance. *However, a resolution of the city council which authorizes a city attorney to acquire land for a municipal purpose is not construed as a redelegation of the power of eminent domain, but merely as an official authorization by the city of an exercise by the city, in its own right, of the delegated power of eminent domain.* Since it is a corporate entity it can act only through its officers or agents so far as ministerial or administrative acts are concerned." (Italics supplied.)

The cases cited by the trial court stand for the well-established rule that an officer or agent of a municipality cannot bind the city when he acts beyond the scope of his lawful powers. However, none of these cases offer much assistance in determining *what* those lawful powers are, and thus are not of assistance here.

In determining whether, as a matter of law, the city attorney has the authority to enter into a stipulation of settlement, it should be noted first that what is involved is the scope of the powers of an *attorney*. In 62 C. J. S., Municipal Corporations, § 695, p. 1387, this rule is stated:

"A city attorney exercises the ordinary functions of retained lawyers, and may bind the city to that extent, but, ordinarily, the attorney for the municipality has no greater power in this regard. In the absence of special authority, he cannot bind the city by a compromise of claims, except possibly in an emergency, * * *."

Also, in West v. Bank of Commerce & Trusts, 167 F. 2d 664, 666 (4 Cir. 1948), the court stated the rule as follows:

"* * * The ordinary rule is that an attorney at law has no authority, without his client's permission, to compromise his client's claim and this rule seems to apply to attorneys for municipalities as well as to attorneys for private individuals."

A case which illustrates the workings of the rule and which involves analogous facts is Richardson v. City of Seattle, 97 Wash. 371, 166 P. 639 (1917). The city of Seattle contended that its city attorney was without authority to enter into a binding stipulation made during the course of a condemnation trial. In rejecting the city's claims, the court stated (97 Wash. 377, 166 P. 641):

"* * * [The city] contend[s], however, that the corporation counsel of the city of Seattle had no authority to enter into such a stipulation as that made at the condemnation trial, and that the city could not be bound thereby. That contention cannot be sustained. The corporation counsel was a duly authorized representative of the city to act for it in all trials and proceedings at law. It is a general rule that a party to an action is bound by the stipulations and agreements entered into by his counsel in open court as a part of the proceedings in the cause, and the acts and doings of the attorney are the acts and doings of the client. 4 Cyc. 934, 935; 2 R. C. L. § 63, p. 986; Coonan v. Loewenthal, 129 Cal. 197, 61 Pac. 940. If the corporation counsel had no authority to make such stipulation, he had no authority to proceed in any way during the trial, unless each step that he took was first authorized by the legislative or political body of the city."

Thus, a city attorney is placed in no lesser position as such to settle or compromise claims merely because his client is a municipal corporation rather than a private corporation or an individual. We cannot hold that a city attorney, as a matter of law, cannot be given the authority to bind the city to a stipulation of settlement. Therefore, we must turn to the authority given to the city attorney in this particular case.

Except in an emergency, an attorney has no authority to enter into a stipulation to settle and compromise a cause of action with-

out the knowledge or consent of his client. Matteson v. Blaisdell, 148 Minn. 352, 182 N. W. 442 (1921); Gibson v. Nelson, 111 Minn. 183, 126 N. W. 731 (1910). However, an attorney may be authorized expressly to compromise a claim of his client. See, Ghostley v. Hetland, 295 Minn. 376, 204 N. W. 2d 821 (1973); Albee v. Hayden, 25 Minn. 267 (1878).

The powers and duties of the city attorney are set out in Minneapolis City Charter, c. 3, § 5, as follows:

"The City Attorney and his assistants shall constitute the legal department of the City of Minneapolis, and shall have charge of all legal matters connected with the city government and all the several heads and departments of the same, and of the several boards of said city which now exist or are hereafter established in connection with the city government.

"The City Attorney shall be the head of such legal department and shall have the control, supervision and direction of all matters of such department. He shall be the legal advisor of the Mayor, City Council, its committees and all other officers of the city and of the boards hereinabove named. He shall, either personally or by such assistance as he may designate, render and perform all the legal services incident to the legal department * * *."

In addition, the city's condemnation petition of May 8, 1974, contained the following paragraph:

"That at a regular meeting of the City Council of the City of Minneapolis, held on April 26, 1974, the said City Council regularly adopted the following resolution by Alderman Miller:
\* \* \* \* \*

"BE IT FURTHER RESOLVED that the City of Minneapolis acquire either fee simple title to, or sufficient interests in, said properties by gift, lease, purchase or condemnation proceedings in the manner provided by law, in accordance with Minnesota Statute 459.14, Chapter 677 Laws of Minnesota 1971 as amended by Chapter 357 Laws of Minnesota 1974 and Minnesota Statute 117

to provide the necessary facilities; and that the City Attorney be and is *hereby authorized and directed to take all necessary steps to prepare for, institute, and prosecute on behalf and in the name of the City of Minneapolis all such condemnation proceedings as may be necessary for the acquisition by said City of Minneapolis of the above described property for the purpose above stated, the costs thereof to be paid from the Development District Fund (34-21)."* (Italics supplied.)

In our opinion there is little doubt that by this resolution the city council gave authority to the city attorney to acquire the property from Burner and to agree to the prices to be paid for it. Neither the resolution of the city council nor the stipulation itself conditioned the stipulation's effectiveness on council approval. Moreover, the record is devoid of any indication of fraud or mutual mistake in the execution of the stipulation. Therefore, on the facts of this case, we hold that the city is bound by the stipulation.

We do not hold that a city attorney can in every instance, even when clothed with the apparent authority to negotiate and settle, make an outrageous settlement where it would be apparent to any reasonable person that the settlement is wholly without justification and therefore is without the consent, express or implied, of the city council. But such are not the facts of this case.

Reversed and remanded with instructions to enter summary judgment for appellant for the amount of the award agreed to in the stipulation of settlement, plus costs and disbursements.