GRANDNORTHERN, INC., Respondent,

v.

WEST MALL
PARTNERSHIP, Appellant,

Claire B. Forsberg, etc., Respondent.

No. C4-84-995.

Court of Appeals of Minnesota.

Dec. 11, 1984.

James S. Lynden, Stringer, Courtney & Rohleder, Ltd., St. Paul, for respondent.

Peggy A. Nelson, Winthrop, Weinstine & Sexton, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and SEDGWICK and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

This is a dispute over the status of a commercial lease. Respondent-tenant claimed its lease remained effective having timely exercised its option to extend the lease for an additional five year term. Appellant, the landlord's assignee, asserted the lease had expired and respondent was a holdover, month-to-month tenant. Finding no genuine issues of material fact, the trial court granted respondent's motion for summary judgment and declared its lease extended. We agree and affirm.

## FACTS

On June 1, 1979, Grandnorthern, Inc. entered into a commercial lease agreement with the then owner of Victoria Crossing Properties, James J. Wengler. Street level retail space in the Victoria Crossing Mall

West was leased for a term of two years, expiring May 31, 1981.

Respondent had an option for three additional five year terms, to be exercised by respondent's written notice to its landlord at least 180 days prior to the expiration of any existing term. Failure to provide written notice with continued occupancy after the original term extended the lease on a month-to-month basis.

About June 1980, Russell Weaver, respondent's president, learned from his bookkeeper, Pradeep Kuthiala, that Victoria Crossing Mall West might soon be sold. At that time, Kuthiala was also the bookkeeper for respondent's landlord, James Wengler.

Weaver decided to exercise the option to extend the lease and asked Kuthiala to type a letter to Wengler notifying him of respondent's intent to exercise the option. Kuthiala typed the letter, dating it June 1, 1980. The following day, Weaver signed and returned it to Kuthiala. Kuthiala, acting as landlord Wengler's agent, stamped it "received June 02, 1980." A copy was returned to Weaver and the original filed in Wengler's landlord file pertaining to respondent. Kuthiala later informed Wengler respondent's lease extension had been received.

During summer 1980, James Crockarell and Laurel March Crockarell began negotiating with Wengler to purchase his interests in Victoria Crossing West. During the negotiations, the Crockarells prepared an "Estoppel Certificate" which they asked each tenant to sign. The certificate required tenants to disclose certain information and representations regarding their tenancy. This included the beginning date of their lease but not the expiration date or whether the lease had been extended or renewed.

William Wengler, respondent's vice president, signed the estoppel certificate on behalf of respondent on June 27, 1980, but did not indicate respondent had extended its lease.

On September 4, 1980, James Wengler sold Victoria Crossing West to the Crockarells and others d/b/a West Mall Partnership on a contract for deed with assignment of leases. James Wengler signed an affidavit stating he was not aware of any lease changes between the dates of any estoppel certificate and the date of sale, except two specific tenants had sent lease renewal letters. His affidavit contained no references to respondent.

In 1981, Claire B. Forsberg approached appellant about renting street level retail space in Victoria Crossing West. She was told no space was available on street level but second floor space might be available if appellant remodeled. Forsberg met with appellant several times during 1981 to work out a solution, but continued to voice her desire for street level space. Respondent asked Forsberg in May 1982 if she would like to sublet respondent's space.

Appellant refused to approve the sublease, claiming their records did not indicate receipt of respondent's notice of intent to extend its lease. Appellant claimed respondent was a month-to-month holdover tenant, had no lease to assign to Forsberg, and stated that Forsberg must negotiate a lease directly with appellant. On August 1, 1982, appellant notified respondent it was terminating respondent's lease.

Appellant contends respondent's notice of intent to extend its lease was not delivered to the landlord on June 2, 1980. Appellant claims respondent drafted the lease extension notice long after its option to extend had expired, back-dating it to June 1, 1980, solely to sublease its premises to Forsberg.

## ISSUE

Did appellant raise a genuine issue of material fact?

## ANALYSIS

■ 1. When a summary judgment is appealed, the function of the reviewing court is:

to determine (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law.

*Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). Appellant claims no errors of law and does not challenge respondent's right to extend the lease by proper written notice. Rather, appellant contends respondent's extension letter was fraudulently prepared in June 1982, long after the time for renewal had passed.

2. A motion for summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. Minn.R. Civ.P. 56.03; *see also Burner Service and Combustion Controls Company, Inc. v. City of Minneapolis,* 312 Minn. 104, 106, 250 N.W.2d 224, 226 (1977). The trial court must view the evidence in a light most favorable to the nonmoving party. *Sauter v. Sauter,* 244 Minn. 482, 484–85, 70 N.W.2d 351, 353 (1955). "All doubts and factual inferences must be resolved against the moving party." *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). The moving party has the burden to prove there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

(a) To support its allegation of fraud, appellant submitted an affidavit of Laurel March. Minnesota Rule of Civil Procedure 56.05 states:

> [O]pposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * [A]n adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial.

*Id.; see Rosvall v. Provost,* 279 Minn. 119, 124, 155 N.W.2d 900, 904 (1968).

Affidavits in opposition to a motion for summary judgment do not create issues of fact if they merely recite conclusions without any specific factual support. *Peterson v. American Family Mutual Insurance Company,* 280 Minn. 482, 487, 160 N.W.2d 541, 545 (1968).

In her affidavit, March concluded:

> [T]he alleged renewal letter was drafted long after the expiration of the deadline for exercising the lease option in order to permit Plaintiff to sub-lease its space to Defendant Claire B. Forsberg, d/b/a Down Home.

March supported her conclusion with four statements of fact. We assume the facts alleged by the nonmoving party to be true and that they could be proved at trial. *Gethsemane Lutheran Church v. Zacho,* 253 Minn. 469, 471, 92 N.W.2d 905, 908 (1958).

March stated that at the time West Mall Partnership purchased the Victoria Crossing West Mall from James Wengler, neither James Wengler nor any representative of Grandnorthern, Inc. mentioned Grandnorthern's lease had been renewed. Even if true, this does not support appellant's assertion respondent's letter of intent to extend its lease was drafted two years after its date.

Respondent was under no duty to disclose the terms of its lease agreement to appellant when it was a potential buyer. On the contrary, in Minnesota a prospective purchaser dealing with realty in the possession of someone other than the seller is under a duty to inquire as to the nature and extent of the occupant's possessory interest. *Konantz v. Stein,* 283 Minn. 33, 42–43, 167 N.W.2d 1, 8 (1969). Possession serves "as notice to a purchaser of whatever rights the possessor has that would be discoverable upon reasonable inquiry." *West Concord Conservation Club Inc. v. Chilson,* 306 N.W.2d 893, 896 (Minn.1981). Appellant made no such inquiry of respondent.

(b) Next, March stated that at the closing on September 4, 1980, James Wengler's

affidavit clearly stated only two tenants had renewed their leases. The affidavit pertained to modifications or extensions of leases that might have occurred *between* the time the tenants' estoppel certificates were signed and the closing. Respondent's extension letter of intent was delivered several months before. Neither party claimed respondent's letter of intent was submitted to Wengler during the time period just prior to the closing. These facts do not support appellant's conclusions.

(c) Third, March stated that on June 27, 1980, after its claimed lease renewal of June 1, 1980, respondent signed the Cockarell's estoppel certificate which stated, "[The Lease] has not been assigned, amended, modified, supplemented, or rescinded since the date of the Lease [June 1, 1979] either orally or in writing * * *." If the certificate is to support appellant's conclusion that respondent's letter was not drafted June 1, 1980, these words must be construed to include "extended."

■ Ambiguous terms in contracts are to be strictly construed and interpreted against the drafting party. *See Wick v. Murphy,* 237 Minn. 447, 453, 54 N.W.2d 805, 809 (1952). The terms in the certificate should not be presumed to mean "extended." Appellant failed to specifically ask if a lease had been extended or the date of lease expiration. The facts do not support appellant's conclusion.

(d) Finally, March stated James Wengler delivered an assignment of leases at the closing which further provided that none of the leases had been "modified, rescinded, amended or otherwise changed since its respective date."

At the time of the sale, respondent's original lease term was still in effect. This clause in Wengler's lease assignment could *not be interpreted as* Wengler's verification of the contents of the individual tenants' estoppel certificates. Wengler was not a party to those certificates. He could only verify any modifications or extensions in a lease that might have occurred after the estoppel certificates were signed.

■ March's affidavit is insufficient to support her conclusion that respondent's renewal notice was not sent in June 1980.

■ 3. Respondent is entitled to summary judgment because its letter of intent to extend on June 2, 1980, fulfilled the lease requirements. To support its renewal of the lease on that day, respondent submitted a substantial number of affidavits and a copy of the extension letter itself. Most significant is the affidavit of Pradeep Kuthiala, the office manager and agent of respondent's landlord. Kuthiala now resides in India and was not deposed. However, his affidavit outlines in detail the process by which respondent's letter was drafted, signed, delivered, and received by him, with a stamped copy returned to respondent.

Appellant offered no evidence to discredit Kuthiala's affidavit except to assert he was employed by both respondent and its landlord. There was no evidence that Kuthiala had any interest in either the landlord's or the tenant's business, nor was there any evidence that Kuthiala had an interest in this litigation.

The Eighth Circuit Court of Appeals upheld a summary judgment in a similar case, stating:

> It has been held that the clear affidavits from the only persons in a position to be aware of a factual situation can well serve as the basis for a summary judgment.

*Lundeen v. Cordner,* 354 F.2d 401, 406 (8th Cir.1966).

*Lundeen* involved a challenge to the beneficiary clause of a life insurance policy. Although the names of the beneficiaries had not been changed on the policy itself, both parties agreed, if the decedent's attempt to change the names was complete but for a ministerial duty on the part of the insurer, the change would be effective. *Id.* at 403. Documents and affidavits were submitted to support the change, including the affidavit of a disinterested third party who had helped the decedent prepare his change of beneficiary forms. The affiant,

residing in Singapore at the time of the litigation, sent his affidavit containing the facts surrounding the decedent's attempt to change the beneficiaries of his life insurance policy. *Id.* at 406.

Here, Kuthiala is a disinterested third party who was in the position to know the exact circumstances of respondent's lease renewal. Kuthiala's affidavit clearly indicated respondent's lease extension was received by the landlord on June 2, 1980. A copy of the extension notice was produced by respondent along with other supporting evidence.

### DECISION

Respondent has sustained its burden of proving there are no genuine issues of material fact and is entitled to judgment as a matter of law. The trial court's summary judgment and appropriate related relief are affirmed.

Affirmed.